No. 13,763.

Mrs. K. L. Brigham et als. vs. C. Newton et al.

Syllabus.

When an attorney at law chooses to occupy towards an inexperienced woman and her minor children, whilst holding the property of the latter in his possession, the triple relation of attorney, agent, and lender of money, he is bound to keep an intelligible account of his transactions with his clients, and can be permitted to derive no advantage from his failure to do so.

APPEAL from the Sixth Judicial District Court, Parish of Ouachita.—*Barksdale, J.*, Third Judicial District, acting for *W. P. Potts,* Judge of the Fifth Judicial District, recused.

*Stubbs & Russell,* for Plaintiffs, Appellees.

*C. Newton,* Defendant and Appellant, *in propria persona.*

The opinion of the court was delivered by

Monroe, J.   Upon the former hearing of this case, there was a judgment in favor of the plaintiffs, Mrs. K. L. Brigham, J. W. Saunders, and W. G. Saunders, and against the defendant, C. Newton (the other defendant having been eliminated), decreeing said plaintiffs to be the owners of the plantation sued for, and further, as follows, to-wit: " That plaintiffs do have and recover from the defendant, the revenues " thereof, from the date of his purchase, diminished by the taxes, value " of useful improvements made by defendant, and by all payments or " advances made by him to Mrs. Saunders, as tutrix, or to plaintiffs, " with interest thereon; the revenues of 1890, 1891 and 1892 being " fixed by the rent notes; that, to adjust the account the case be " remanded, and, in all other respects, the plaintiffs demand be re- " jected, and that defendant pay costs." Mrs. K. L. Brigham vs. C. Newton, 49 Ann. 1539.

Agreeably to this decree, there has been another hearing in the District Court, resulting in a judgment in favor of the plaintiffs, on their demands for rents and revenues, in the sum of $2145.36, "being balance due * * * January 1st, 1897, for rents from 1890 to 1896, inclusive, after deducting amount advanced plaintiffs' mother,

taxes for same years, repairs, etc. Said balance to bear interest at 5 per cent. from January 1st, 1897," and for $300 as rent for each of the years 1897, 1898 and 1899, respectively (less taxes paid), with interest from January 1st of the year following that for which the rent was held to be due; and in favor of the defendant, on his demand in reconvention, against the heirs of J. W. Saunders for $1440, against Mrs. Brigham for $550.10, and against W. G. Saunders for $226.35, with interest at 5 per cent. upon said several amounts from January 1st, 1897. From this judgment the defendant has appealed, and he complains:

1. That said judgment does not conform to the decree rendered by this court, in that it fails to recognize that the revenues for 1890, 1891 and 1892, have been accounted for.

2. That should it be held that said judgment properly interprets the said decree, nevertheless, there was a settlement between the parties which included the rental for said years, and which should have been recognized by said judgment.

3. That, in any event, said judgment fails to credit the rent note of $750.00 for the year 1890, with $175.00 allowed for fencing, and fails to credit the rent note for 1892 with a discount of 10 per cent.

4. That the advances made by the defendant during the years 1889, 1890 and 1891, which were settled by the rents for the years mentioned, are ignored in ignoring the settlement which defendant claims to have been effected.

5. He claims, for advances, expenditures for improvements, compensation for services in looking after the property, fees, etc., a total of $8321.51, as against $4624.50 admitted to be due to the plaintiffs, or a balance in his favor of $3696.01.

6. He claims that the interest should have been calculated upon the various amounts of debit and credit from the dates of their disbursement, or collection, and that, as thus calculated, there is due him a balance of interest amounting to $1637.69.

## I.

From the reading of the decree whereby the case was remanded, it appears that there was judgment for the plaintiffs for rents and revenues from the date of the defendant's purchase of the plantation, diminished by the taxes paid, by the value of the useful improvements made thereon, and by the amount of the advances made by the defend-

ant to Mrs. Saunders, as tutrix, or to the plaintiffs; "the revenues for 1890, 1891 and 1892 being fixed by the rent notes," and that the case was remanded "to adjust the account." There was no reservation with respect to any rent collected or advances made by the defendant.

## II.

In support of the claim that there was a settlement with respect to the three years mentioned above, the defendant relies upon two documents, which appear to have been signed by Mrs. Saunders, tutrix, being "Exhibit 8," which bears no date, and "Exhibit 104," dated June 21st, 1892. These instruments are in the nature of receipts, which are open to explanation and contradiction, and it was so considered when the case was remanded.

## III.

It is true that, upon the rent note for 1890, the lessees, Maguire and Brooks, were allowed a credit of $175 for improvements which they were to make upon the plantation. And it is possibly also true, that the defendant was authorized to discount, at 10 per cent., the rent note for 1892. He is, therefore, entitled to a credit of $250 on the $2250 represented by the three notes given for the rent for the years 1890, 1891 and 1892. But our investigation of the case has resulted in the conviction that the aggregate of the credits allowed to the defendant by the judgment of which he complains, exceeds the total to which he is entitled by an amount greater than all the credits which are said to have been omitted.

## IV.

It is claimed, in effect, that, whilst holding him liable for said rent notes for the years 1890, 1891 and 1892, the judgment appealed from fails to credit him with the advances and disbursements made by him during those years and which, by virtue of the settlement which said judgment ignores, operated the extinguishment of his obligation with respect to said notes. But this claim does not appear to be supported by the fact. The judgment in question holds the defendant liable to the plaintiffs in the sum of "$2145.36, this being the balance due by him January 1st, 1897, for rents from 1890 to 1896, inclusive, after deducting amount advanced plaintiff's mother, taxes for same years, repairs, etc., said balance to bear interest, etc." The evidence shows that the amount of rent collected by the defendant, during the years mentioned, was $3950, from which it follows that in fixing $2145.36 as

the balance due by him on account of such collection the judge *a quo* has credited the defendant with $1804.64 for advances, taxes and repairs, as stated in the judgment. That the amount thus deducted is not as large as the defendant thinks it should have been, is quite possible, but that is another matter.

## V.

The defendant claims for advances, expenditures for improvements, fees, and compensation for services in looking after the property, the sum of $8321.51, as against $4624.50, which he admits to be due by him to the plaintiffs, or a balance in his favor of $3696.01.

It is necessary to a proper understanding of the particular questions which are to be considered, that the relative positions of the parties to this litigation, together with the circumstances which brought them into relation with each other, should be stated.

In the early part of 1889, Sidney W. Saunders, an uncle of the plaintiffs' died, intestate, leaving an estate valued at something like $100,000. It seems to have been supposed that he was unmarried and childless, and his heirs at law, including the three plaintiffs, all of whom were then minors, represented by their mother, as natural tutrix, took steps to have themselves put in possession of his estate, which, as we understand it, was, mainly, in the parish of Ouachita. A person appeared, however, who claimed to be the widow in community of the decedent, and there was some litigation inaugurated in her behalf, successively, in the State and Federal courts. But a compromise was effected, without trial, and the heirs proceeded to partition the estate among themselves. The share received by the plaintiffs consisted of the plantation in controversy, appraised at $8000, together with cash and stock in several corporations to the amount of about $3000. The plaintiffs were quite poor, with limited education, and limited experience in business matters, and their mother, who was about as they were, employed the law firm, of which the defendant was a member, to attend to their interests in the succession and in the litigation which threatened it, and the business was taken in charge by the defendant, individually. In the autumn of 1889, acting on behalf of the tutrix, the defendant leased the plantation to McGuire and Brooks for 1890, 1891 and 1892, and took their three notes of $750 each, payable at the ends of the years 1890, 1891 and 1892, respectively, subject to a credit on the note for the rent of 1890 of $175; and his firm also came into possession

of a certificate, belonging to the minors, for ten shares of the stock of the Consolidated Ice Company, the market value of which was not less than $1100. It is claimed by the defendant that the tutrix gave said firm a note for $300 for services to be rendered (upon the assumption that there would be no litigation) in the matter of putting the minors in possession, and affecting a partition. And the evidence shows that $200, or more, has been paid on that account. He also claims that she subsequently gave him a note for $1100 for services rendered and to be rendered in the matter of the claim set up on behalf of the alleged widow in community. And, in August, 1890, he caused the stock of the ice company to be sold, and it was bid in by his firm at $1100, and the proceeds appropriated to the payment of the note. This transaction was sustained by the former judgment of this court, and is out of the case which we are now considering, except in so far as it constitutes one of a connected series of transactions, other transactions of which series present the issues to be here determined. The record fails to show that the defendant advanced any money whatever to the minors, or to their tutrix, during the year 1889. On the other hand, his firm held for collection, for account of Mrs. Saunders, individually, a claim against one E. Neuwirth, upon which they collected $750, out of which they seem to have made some payments by authority; and upon November 26, 1889, they accounted for the balance, and took a receipt, which reads as follows, to-wit:

"Nov. 26th, 1889.

"Received of Newton & Cason this day the amount collected by them for me from E. Neuwirth, in suit of H. J. Saunders vs. E. Neuwirth on judgment against E. Neuwirth.

"(Signed)    MRS. HARRIET J. SAUNDERS."

The defendant was, at first, under the impression that no part of the amount collected had been retained by him or his firm, but, upon cross-examination, admitted that he might have retained $150. He is, however, particular to say that, if he did so, it was for money due him by Mrs. Saunders, individually.

In view of the ignorance and inexperience of his client and of the defendant's uncertainty as to whether he retained any of the money collected for her account, and, if so, how much, it must be admitted that the form of the receipt written by him leaves much to be desired. During the year 1890, up to July 5th, the defendant may possibly have advanced

to the tutrix as much as $250, though the evidence on that subject is inconclusive. Assuming that he did so, he had in his hands the three rent notes, which were perfectly good, amounting (after deducting credit of $175) to $2075, and the certificate of stock which, if available for the payment of the amount claimed to be due him, as he made it very soon afterwards, could certainly have been made available at the date mentioned for the payment of taxes for which the plantation was advertised for sale.

The tutrix, however, brought him a notice which she had received, to the effect that the plantation would be sold July 5th, 1890, for the taxes of 1889, amounting to $121. She told him that she had $60 and that she needed $61 more in order to pay said taxes and prevent the sale, and she requested him to advance that amount. His version is that she asked him to pay the taxes, and that he answered: "I told her that " I would not pay the taxes, but that the property would sell and I " would buy it in at the sale; that, under the law, she would have the " right to redeem that property within twelve months anyhow; that it " was the only security I would have for the money which I had paid " out, and I also told her that it might have the effect of relieving the " property from the restraining order which was then pending in the " Federal court, and that, in the event the said action in the Federal " court was sustained, I thought I could hold the property against any " one until they paid the amount of the taxes that I had paid out." "To this, Mrs. Saunders, as I thought, consented," etc. And there is no doubt that she did, under the circumstances, consent that he should buy in the property and hold it *for the owners*. But in view of the fact that, upon the 7th day of August following, the defendant caused the stock of the ice company, then in his hands, to be sold in order to pay his fee in a litigation which had not been terminated, and of the fact that he is now claiming that he then held the rent notes as collateral security, and accounted for them in a settlement subsequently made with the tutrix upon June 21, 1892, for advances made by him up to that date; and of the further fact that he could have paid the taxes in the name of the owner and have obtained subrogation to the rights of the State with respect thereto, it is difficult to understand what he means by saying that it was necessary for him to buy the property of the minors, who were his clients, at tax sale, in order to secure himself with respect to money paid out for their account; and it is equally difficult to understand how, being a lawyer, he could have imagined

that any such contrivance would screen the property from the pursuit of a litigant, represented by competent counsel, who had already brought an action claiming an interest in the same; since, situated as he was, there was nothing that he could be heard to say, except that he had bought the property with the consent of his clients and for their benefit.

Be all that as it may, the defendant became the adjudicatee of the plantation, took possession of and dealt with it as his own and, thereafter, he made advances to the owners, or for their account, until the aggregate amount claimed by him far exceeded anything that they were able to pay; for, in fact, they had no other property. And they thereupon brought this suit, with the result as stated in the beginning of this opinion. When the case was here before, more than a hundred exhibits, or vouchers, encumbered the record. They had been brought up in the original, because, in many cases, they were attacked upon the ground that they were not entirely genuine, and did not truly represent the transactions which they purported to represent.

About the most material difference which the case now presents is that out of the whole number of vouchers which were presumably here on the former hearing, thirty-six are, at present, missing. And although probably nothing could add to the confusion in which the defendant has involved his dealings with the plaintiffs, the circumstance mentioned has not tended to simplify the investigation of those dealings. Nevertheless, as the plaintiffs have neither appealed nor prayed for any amendment of the judgment appealed from, and as, therefore, the only question which we are called upon to determine is whether the amount of said judgment, in so far as it is in favor of the defendant, should be increased, the facts which we find entangled in the record amply subserve the purposes of the occasion.

It has been stated that the defendant entered into the business out of which this litigation arises as the attorney and counsellor of a widow, acting as the tutrix of her three minor children whose interests he was employed, and paid very liberally to protect. The eldest of these minors, John W. Saunders, attained majority in the fall of 1889, and was, thereafter, dealt with in person. He called himself a painter, by trade, had little education and less experience, and coming into an inheritance, appears to have been disposed to run through with it as rapidly as possible. It may be necessary to recur to his case, but, for the present, it suffices to say that the defendant claims that, by July 2, 1891,

he had advanced to him an amount not exceeding five hundred dollars (including the price of a buggy, with a pole and harness, which he let him have for $100). And that, upon that day, he obtained from him a transfer, or relinquishment, by notarial act, of his entire interest in the property which he had inherited from the uncle, and which, the defendant does not deny, was valued, at that time, at something like $3000. It is true that the defendant made further advances afterwards, and the learned judge *ad hoc.*, laboring under the same difficulties with which we find ourselves confronted, since he did not try the case originally, has given judgment in favor of the defendant and against the heirs of J. W. Saunders (for the young man is now dead) in the sum of $1440, which amount, we understand, the defendant to claim, should be increased to $1740, *plus* $753.72 in the way of interest up to July 20, 1899.

But, leaving this for the present, the second of the minors, Kate, was married to C. P. Brigham in February, 1891, attained her majority in October, 1891, and became a widow sometime in 1892. Up to the date of her marriage, and for a while after, the defendant appears to have dealt with her mother with respect to the advances charged to her account, as he did, also, with respect to the advances charged to the account of Wesley, the youngest of the minors, who did not become of age until April, 1894.

From the defendant's testimony it would appear that he had advanced to the tutrix, for the account of the two minors last above mentioned, up to October 17, 1890, $623.00, for which he took her note; that, upon November 3, 1890, he took another note, which included the first, for $763, and that, upon December 4, 1890, he took still another note, which included the second, for $819. It seems to have been the defendant's general method of dealing, to include all previous obligations in the last one taken, and as all the notes which have been left in the record bear interest at 8 per cent. we are led to infer that the oftener he took a new note, the oftener he compounded the interest. As, for instance, in the note for $763, of November 3, 1890, there was included, as we understand it, the accrued interest upon the note for $623 of October 7, 1890. So that the interest in that case was compounded at the end of seventeen days, and in the next case, at the end of thirty-one days.

The defendant claims to have advanced to the tutrix, for account of the two minors, Kate and Wesley, between December 4th and December

15th, 1890, the additional sum of $361.80, and to have taken her note for that amount upon the date last mentioned. He claims to have paid a doctor's bill of $65 December 11th, 1890, for account of J. W. Saunders, who was then of age. He claims to have advanced to the tutrix $13.70 December 16, 1890, for which he took a note; and he claims to have advanced to the tutrix, between December 16th, 1890, and January 2, 1891, $426.50 for which he took a note. There are several peculiarities about these charges, viz: That the tutrix should have drawn $361.80 within a period of eleven days is inconsistent with the plaintiffs' manner of living, with their testimony, with the defendant's habit of making advances, which rarely exceeded $50 at a time; with his habit with regard to the taking of notes, and with everything, including his own acts and some of his statements, which the record discloses. The doctor's bill, paid for account of J. W. Saunders, who was then a major, ought to have been, and probably was, charged to him and not to his minor brother and sister, who were not liable for it. But, being charged to them, there can be no reason to doubt that, like other advances so made, it was included in some note subsequently given by the tutrix. The remarks concerning the note for $361.80, dated December 15, 1890, are equally applicable to the note for $426.50 dated January 2, 1891, except that, about that time, the tutrix obtained, in orders for merchandise and money, probably $150 more than she would otherwise have obtained for the purpose of providing a trousseau for her daughter who was married in February, 1891. And, finally, it will be observed that these different amounts, including the note for $819, dated December 4, 1890, make a total of $1685; and yet, upon March 2, 1892, the defendant took from the tutrix a note with a confession of judgment, and claims to have obtained judgment thereon, by virtue of the confession, against the maker, as tutrix of the minors, Kate and Wesley, for $984, although Kate had been married in February, 1891, and had attained her majority in October of that year, and the defendant has failed to refer us to the law by virtue of which a tutrix is authorized to confess judgment in the name of her ward. It may be remarked here that the note and judgment for $984, with certain notes, or vouchers attached, was filed in evidence on the original trial, as "Exhibit No. 23," but is now missing from the record, and the other notes mentioned, if ever filed, are also missing. Turning, however, to the testimony of Mrs. Saunders, we find the following, to-wit: "Q. What was the note dated January 19, 1891, attached to "Exhibit No.

23," and being for $480 given for? (Objected to by defendant for the reason that the note inquired of is embodied in a confession of judgment, which judgment was signed, March 14, 1892, by the judge of the· Sixth Judicial District Court of Morehouse, and the consideration of said note cannot now be inquired into—inadmissible under the allegations of the petition. Objection overruled. Defendant excepts, etc., etc.) A. It was brought over to the 1891 rent note. Q. What do you mean by that? A. It was given to cover all little notes for 1890. Q. Was that the entire amount that you had gotten from Mr. Newton, or, was it a balance claimed by him after being credited with the rent of 1890? A. I don't know that it was the entire amount? Q. What became of the rent of 1890? A. I received the money for the rent note of 1890. Q. When? A. At the close of 1890. Q. How? A. I had been getting money from Mr. Newton. Q. What did you do at the close of 1890 with reference to the rent of that year? (Objected to, and objection overruled), A. I gave Mr. Newton this $480 note. This testimony is almost unintelligible, and serves, for that reason, to show the utter ignorance and business incapacity of the witness. But it also shows that there was a note for $480, dated January 19, 1891, which she had given to the defendant at that date. So that it would appear, according to defendant's version, that upon December 4, 1890, she·gave him a note for $819; upon December 15, 1890, a note for $361.80; upon December 16, 1890, a note for $13.70; upon January 2, 1891, a note for $426.50, and upon January 19, 1891, a note for $480. And, yet, throughout this whole record, it is manifest that all the money advanced by the defendant was advanced in driblets, usually $10 and $15, up to $50, with, possibly, one or two excep-- tions, when as much as $100 may have been advanced, though it is doubtful if there is a well authenticated instance of that kind. And, even where as much as $50 was advanced to any one of the plaintiffs, it was usually partly in money and partly in orders for merchandise, the largest check among the exhibits on file calling for only $40. Under these circumstances, we should be at a loss, upon this branch of the case, for a reason for holding that the defendant advanced more than $984 to the tutrix, prior to March 2, 1892, and we assent to that figure, not because of the note, or confession, to which we attach no importance, but because, from all the testimony and facts, taken together, it seems reasonably certain that she received that much money. As an original question, we should hestitate to apportion

this amount equally between the two minors, but, as they are not com-plaining of the judgment, from which the plaintiff, alone, has appealed, and as we find no reason for increasing the amount allowed him, as to either of them, the question of their relative liability with respect to any particular item charged against them both, is a matter of no importance, since no change can be made in the judgment in that respect.

Starting, then, with the $984, as the total indebtedness contracted by their tutrix upon their account, up to March 2, 1892, we are to add the debts contracted by Mrs. Brigham in her own behalf and by the tutrix on behalf of the minor, Wesley, after that date.

### MRS. BRIGHAM.

The defendant charges Mrs. Brigham with $1172, including the sum of $492, which represents one-half of the amount of the note and alleged confession of the tutrix, of March 2, 1892. Among the items which go to make up the sum thus charged, the following are worthy of attention, to-wit:

He charges her with a note of $40, dated December 10, 1891, and the evidence shows that she gave such a note, which we find in the record as "Exhibit 102." But the evidence also shows that she received for this note a check for $40, which we also find in the record, as "Exhibit No. 40," dated December 11, 1891, and which appears in the defend-ant's account as a separate charge. So that, in these two items she is charged $80 for $40 which she received. But this is by no means all. Upon June 19, 1893, the defendant addressed to the plaintiff the fol-lowing letter, to-wit:

MONROE, La., June 19, 1893.

*"Mrs. Kate L. Brigham—*

"DR. MDME.—I send you note to sign for money you want. Will try and get you, say, $50 now, and will try and spare you some after a while. Will include all your notes, with this, in one, as I do not want so many notes. Sign where designated and return to me, and I will return other notes.                    (Signed)   C. NEWTON."

Enclosed in this letter was a note which, in its present shape, reads as follows (being "Exhibit No. 38.")

"BASTROP, La., June 20, 1893.

"One day after date I promise to pay C. Newton or order the sum of

two hundred and ninety-five dollars, with 8 per cent. interest from date, for moneys received of him, and I hereby accept service of petition, waive citation and legal delay, and confess judgment in favor of C. Newton for said amount, interest and costs.

"(Signed)   KATIE BRIGHAM."

The plaintiff signed this note, and delivered it to the defendant, though she denies, under oath, that the waiver and confession of judgment were incorporated in it at that time, or at any time, with her knowledge or consent. But the defendant did not return to her the notes previously signed, among which was the note for $40, dated December 10, 1891. And the note for $295, as also the note for $40, as also the check in consideration of which the note for $40 was given, all appear, as separate items, making up the total of his claim against this plaintiff for $1172. Nor is this all. It will be observed that the defendant writes, June 20, 1893, "will try and get you, say, $50, now," etc. Agreeably to that promise, upon June 26th, he wrote to her as follows ("Exhibit 0-3.")

*"Mrs. Kate L. Brigham—*

"DR. MDME.—I send you check for $25. Will send you balance of $25 as soon as I can get hold of some money.

"Yours respectfully,                    J. NEWTON."

This check the plaintiff received, but, there being a delay as to the remaining $25, she wrote, July 6, 1893, as follows: (the quotation being literal,)

"BASTROP, LA., July 6, 1893.

*"Mr. C. Newton—*

"KIND SIR.—I received your note, and the check for $25, and your promise for the other $25. You did not mention the fifty dollars that I ask you for. You sent me a note to sign for what money I wanted, and you would return the fifty dollar note. I signed for one hundred dollars, if you can send it, please send it as soon as possible and return the fifty dollar note if you can't let me have it let me know and send the note for $100 back to me and send me the $25 I am owing all of it hate to bother you so much. Respectfully,

"(Signed)   KATIE BRIGHAM."

It is not easy to understand this letter, but, it may be remarked that whilst the plaintiff acknowledged her signature to the note for $295, she appears to have been, always, under the impression that she had signed a note for $100. However that may be; upon July 24, following the above, the defendant wrote:

"MONROE, LA., July 24, 1893.

"*Mrs. Kate L. Brigham*—

"DR. MDME.—I enclose you check for bal. $50 promised you. The check is for $25. I sent you $25 before. Hope you and family are well.

Very respectfully,

"(Signed)   C. NEWTON."

The plaintiff thus received the $50 promised in the letter of June 19th, and which was to have been included in the note enclosed in that letter. And she is now charged with the two checks, making up that amount, as separate items, in addition to the $295 of which they were to have constituted a part.

And so, upon September 1, 1893, she gave a note for $50, for which she received a check for $10, an order on Wolff for $10, in merchandise, and an order on Leopold for $30, in merchandise. She is now charged with the note, and also with the check and the order on Wolff, though the order on Leopold appears to have been overlooked. There are other instances of a similar character, in fact, there are so many of them running through the defendant's entire transactions with the plaintiffs and their tutrix that it is a question whether they constitute the rule or the exception. But, whilst all men are liable to commit errors, and the defendant, as we thus see, has committed many, we have yet to find one, committed to his own, financial, prejudice. And it was an account made up in this way that the plaintiffs were required to settle as a condition precedent to the restoration of their property, which their legal adviser and agent had bought at a tax sale, whilst holding available assets, belonging to them, many times greater in value than the amount of the tax for which the sale was made. Our conclusion as to Mrs. Brigham's account is, that she, probably, owes the defendant $830, including the $492, representing one-half of the amount of the note of the tutrix of March 2, 1892, and also including a judgment obtained by Baer Bros., for $45.10, of which the defendant became the transferree in April, 1892.

As to the account of Wesley Saunders, and of John W. Saunders.

we might, by the same process, demonstrate that the defendant has already been allowed, by the judgment of which he alone complains, an amount, in excess of that to which he is entitled, sufficient to compensate any error in said judgment, to his disadvantage. And, equally is this the case with respect to his claim for improvements, and with respect to any other claims which he sets up."

It was the duty of the defendant, who chose to occupy, towards a comparatively helpless woman and her children, the triple relation of attorney, agent, and money lender, whilst holding possession of their property, to keep an intelligible account of his transactions, and he can be permitted to derive no advantage from his failure so to do. As the matter stands, and as far as we are able to judge, the case is one which, as presented, no human being could determine with any degree of assurance that his decision would be in exact accordance with the facts. And we are satisfied that our learned brother, from whose judgment the appeal is taken, has given it the most careful and conscientious consideration, and has reached a conclusion from which, as to its general results, we should not, even had the plaintiffs appealed, have materially differed.

Judgment affirmed.

PROVOSTY, J., takes no part.

Rehearing refused.